*George E. Halladay* for Libelant.

*F. H. Canfield* for Respondent.

## Superior Court of Detroit.

### MARY E. BAKER

vs.

### JAMES MAHER.

*Common Carrier—Measure of Damages.*

An expressman carrying the baggage of railway passengers from the depot to hotels and private houses is a common carrier, and is liable for the loss of baggage while in his care and custody.

The measure of damages is the value of the baggage.

Trial, verdict and judgment, March 16, 1880.

Plaintiff is the sister of the wife of Rev. Dr. J. H. Bayliss. The latter was appointed pastor of the Cen-

tral M. E. Church, Detroit, in September 1879, and on the 24th day of that month removed with his family from Indianapolis, Indiana, to Detroit. The plaintiff, who resided in Chicago, accompanied Dr. B. and family to Detroit, intending to remain some little time. She brought along a trunk containing valuable clothing and jewelry.

On arriving at the Central depot in the evening, defendant, who was an expressman who habitually carried baggage to and from trains, as well as other articles from place to place in the city, was employed to take the baggage of Dr. Bayliss and his family, and the trunk of plaintiff, to the residence Dr. B. was to occupy, at No. 436 Cass Avenue, corner of Sproat street. While on his way to that number defendant stopped at a house to deliver the trunk of some other passenger, and while in this house some one or more persons stole the plaintiff's trunk from defendant's wagon. The trunk was found the next day in an alley broken open and emptied of its contents, but there was never any trace of the clothing and jewelry.

Plaintiff's declaration contained one count in trover and one in case.

On the trial before Hon. J. Logan Chipman, judge of the court, and a jury, defendant sought to maintain the point that defendant was not liable as a common carrier, but only for gross negligence which defendant was not guilty of in this case.

He also sought to maintain the proposition that in any event defendant could only be held liable for the

loss of ordinary baggage, and not for jewelry and rich clothing valued altogether at more than $150.

The jury found a verdict for plaintiff in the sum of $388.13. Costs were taxed at the sum of $42.

Defendant conveyed to his wife his real estate about this time. Plaintiff filed a bill to set aside the conveyance as in fraud of her rights.

But this cause never came to a hearing, the case being settled by the parties.

The plaintiff had never before been in a court of justice, and while a very intelligent lady, knew almost nothing about the forms and methods of procedure, yet she proved a very cool, clear, candid and intelligent witness. Mr. Hawley is a very skillful examiner of witnesses, but he did not in his cross-examination of Mrs. Baker shake her testimony in chief in the least. She gave the history of articles of jewelry with great particularity when asked, and showed herself possessed of a wonderful memory.

The following is the charge of the Court, CHIPMAN, J.:

Gentlemen of the Jury :

The plaintiff brings this action against the defendant, to recover certain property belonging to her, which was lost by the defendant, which she had conveyed to his charge as a common carrier.

It is my duty, gentlemen, under the law, to charge you that the defendant is liable for some damages.

The question of damages is a question entirely for you, under the evidence. The law is for the court. You are to take the law absolutely, as the court gives it. If you fail to do that, you do great wrong. You violate your oaths here, and you wrong the parties. Because, if you make a mistake in the law, there is no redress. If the court makes a mistake in the law, there is a tribunal above the court that can correct the error, and compel the court to do that which is right.

Something has been said, gentlemen, about the hardship of this case; and I deem it my duty to call your attention to that; because such considerations have nothing to do with the performance either of your duties or my duties. We are both sworn officers of the law, and we are here to enforce the law; we are not here to enforce our own ideas, but we are here to enforce the law, whether we deem it right or wrong. The law may, in our opinion, operate harshly in certain cases, but still it is the law, and we have no option. We must enforce it exactly as we find it. It is no hardship, gentlemen of the jury, to require a party to live up to his contract, whatever that contract is. The contract of the defendant in this case, in receiving this baggage, or this property, was to carry it safely to the place designated, and there deliver it. For that a price was fixed. The price was named, or was agreed upon between the parties, and that constituted the contract between them; that he was to deliver that property safely; to deliver it at all events, saving the act of God or the public enemy; and they were to pay him the stipulated price. The evidence tends to show, or does show, because it is undisputed in the case, that the property was not delivered, and never

has been delivered. Undoubtedly, gentlemen of the jury, the property was lost through no error on the part of the defendant, unless the defendant was guilty of negligence in leaving it in the street unprotected. But whether by error upon his part or not, the law remains the same. That property is conveyed to the common carrier, and it is his duty to watch over it, protect it, and deliver it safely. At the time he received the property, he no doubt had the right to inquire as to the kind of property it was, to ascertain whether it was property which required a due amount of care. He is not in the position of a railroad company which is compelled to carry baggage. He is a common carrier of any articles, and his liability to carry is only confined ordinarily to the capacity of his dray or vehicle. He has to carry anything which he can conveniently put upon that vehicle. No doubt he has the right of all common carriers to ascertain what he is carrying, and he may make inquiry. The value of the article may make some difference as to the price. It certainly may make a great difference as to the vigilance and care which he exercises in protecting it. He has the right to inform himself in these particulars, and it is his duty to inform himself if he desires to be protected by the use of this diligence, or to be rewarded by increased pay. In this case no such inquiries were made. The baggage, or the trunk, was received with its contents, and it was lost. That leaves but one question for you : what was the value of the contents of this package. That is entirely a question of fact, and it is there and there alone that the field of your inquiry begins and ends. With anything else

you have nothing to do. You have nothing to do with the hardships of the case, either upon one party or upon the other. You have no right to say to yourselves, it would be hard for this lady, the plaintiff, to lose her property, or to say, on the other hand, it would be hard for Maher, the defendant, to pay for that property. But you should remember the rule of law, whatever the value of that property proved in evidence here is, that you must award.

Now, whatever that value is, you must follow it inflexibly. That is a matter of testimony. You have heard the witnesses, and whatever your good judgment, your sound sense determines from the testimony is the value of that property, whether it is much or little, without regard to the interests of either the plaintiff or defendant, you must give that value.

It is my duty, gentlemen of the jury, in charging you in regard to this matter of damages, to say that you must look carefully into all the evidence. Of course, to give too much would be wrong. To give too little would be wrong. Your duty is to give exactly what is right. You must not impose too great a burden upon the defendant here. You must not take that from the plaintiff which belongs to her. But you must find exactly, if you can, what that property was worth on that 24th day of September, on which it was conveyed to the defendant, and on which it was lost. The value at that time, with interest to the present date, at the rate of seven per cent, will be the amount of damages which it will be your duty to award.

Now, there are elements of value. You have heard

the testimony ; the time that this property had been used ; that is a circumstance which you should honestly consider, whether there has been a depreciation in price, or appreciation in price, since the articles were bought. That is for you to consider. What the real value of the article is, that is for you to consider. Their real value to a person situated as she is ; not to herself alone, but what their value would be to ordinary people, under all the circumstances of the case. She has testified in regard to what she paid for those articles. Of course, whether they are worth what she paid for them or not, is for you to determine. Your experience in human affairs will teach you what weight to give to the testimony upon this subject, both *pro* and *con.* You are to take the entire testimony, and to ascertain from that what this property is actually worth. Whatever this property is actually worth, that you will respond to here, in a sum of money by your verdict, fixing first the value, then calculating interest up to the present time, and that will constitute the amount of damages which you will render in this case.

*Chas. B. Howell and Edwin F. Coneley* for plaintiff.
*Hawley & Firnane* for defendant.